**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

ANDREEA SEICEAN,
10804 Balantre Lane
Potomac, Maryland 20854

        Plaintiff,

v.

EXPERIAN INFORMATION SOLUTIONS, INC.
505 City Parkway West
Orange, California 92668

    Serve:  The Corporation Trust, Inc.
         2405 York Rd, Suite 201
         Lutherville Timonium, MD 21093

FAIR COLLECTIONS & OUTSOURCING, INC.
12304 Baltimore Avenue
Beltsville, Maryland 20705

    Serve:  Cherie Wright
        12304 Baltimore Avenue
        Suite E
        Beltsville, Maryland 20705

        Defendants.
        .

Civil Action No. 8:24-cv-427

**PLAINTIFF DEMANDS**
**A JURY TRIAL**

## **COMPLAINT**

    Plaintiff Andreea Seicean files this Complaint against Defendants Experian Information

Solutions, Inc. and Fair Collections & Outsourcing, Inc. ("FCO") and alleges as follows:

### **PRELIMINARY STATEMENT**

    1.    Congress enacted the Fair Credit Reporting Act ("FCRA") to protect consumers

from the devastating impacts of inaccurate credit reporting. S. Rep. No. 91-517, at 1 (1969)

(explaining that the FCRA was intended to "prevent consumers from being unjustly damaged

because of inaccurate or arbitrary information in a credit report"); *see also Guimond v. Trans Union Credit Info.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (explaining that the FCRA was enacted "to protect consumers from the transmission of inaccurate information about them and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." (citations omitted)).

2.      The statute's express purpose is for "consumer reporting agencies [to] adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b).

3.      Even so, inaccurate credit reporting is still a pervasive, long-standing issue for consumers. For example, in 2012, the FTC published a reporting finding that twenty percent of consumers who participated in its study had at least one error on their credit report.[1] Almost ten years later, the situation was even worse: a 2021 study found that more than 34 percent of surveyed consumers identified at least one error on their credit reports.[2]

4.      Inaccurate credit reporting is especially problematic for tenants. *See* National Consumer Law Center, *Unfair Debts With No Way Out* (Oct. 2022), *available at* https://www.nclc.org/wp-content/uploads/2022/10/UnfairDebts-Rpt.pdf

---

[1] *See* Fed. Trade Comm'n, *Report to Congress Under Section 319 of the Fair and Accurate Credit Transactions Act of 2003*, at 64 (Dec. 2012), https://www.ftc.gov/sites/default/files/documents/reports/section-319-fair-and-accuratecredit-transactions-act-2003-fifth-interim-federal-trade-commission/130211factareport.pdf.

[2] *See* Syed Ejaz, Consumer Reports, *A Broken System: How the Credit Reporting System Fails Consumers and What to Do About It* (June 10, 2021), https://advocacy.consumerreports.org/wp-content/uploads/2021/06/A-Broken-System-How-the-Credit-Reporting-System-Fails-Consumers-and-What-to-Do-About-It.pdf.

5.      FCO is well aware of these issues, as it was sued by the Consumer Financial Protection Bureau for representing that consumers owed debts that they were not responsible for paying. *See* CFPB, *CFPB Takes Action Against Debt Collector for Failing to Investigate Reports of Identity Theft and Misrepresenting Consumers' Debts* (Aug. 17, 2021), https://www.consumerfinance.gov/about-us/newsroom/cfpb-takes-actions-against-debt-collector-for-failing-to-investigate-reports-of-identity-theft-and-misrepresenting-consumers-debts/

6.      Here, FCO is erroneously reporting Plaintiff as owing a debt stemming from a property management company's unilateral decision to replace the flooring in an apartment where Plaintiff previously resided. The basis for that alleged debt is supported neither by contract nor any other basis. Plaintiff, therefore, has no responsibility for paying it. FCO, nonetheless, reported the account to Experian, which then included the collections account in Plaintiff's credit reports.

7.      When Plaintiff disputed the reporting of her account with Experian—affixing to her disputes conclusive proof that no debt is owed—Experian failed to adequately investigate her disputes or remove the inaccurate information from her credit report.

8.      As a result, Plaintiff alleges claims against Experian for: (1) violating the FCRA, §1681e(b), by failing to reasonably ensure the maximum possible accuracy of her credit reports; and (2) violating the FCRA, §1681i, by failing to fully investigate her disputes.

9.      In addition, Plaintiff alleges claims against FCO for failing to properly investigate her disputes and to review all relevant information provided by the consumer reporting agencies in violation of the FCRA, 15 U.S.C. § 1681s-2(b)(1).

10.     Finally, Plaintiff alleges a claim against FCO for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692e, by attempting to collect a debt from her that she did not and does not owe.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681(p).

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff resides in this District and Division, and a substantial part of the events giving rise to Plaintiff's claims occurred here.

## PARTIES

13.     Plaintiff Andreea Seicean is a natural person residing in this District and Division.

14.     Defendant Experian is a foreign corporation with a principal place of business in Orange, California. Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

15.     Defendant FCO is a Maryland corporation with a principal place of business in Beltsville. It is a "furnisher" as governed by the FCRA. It is also a "debt collector" as defined by 15 U.S.C. § 1692a(6) because, upon information and belief, it uses interstate commerce, including mail, to regularly collect or attempt to collect debts from consumers that are owed to another entity.

## FACTS

16.     In June 2022, Plaintiff's lease expired at an apartment complex managed by the Bozzuto Management Company.

17.     After Plaintiff fully vacated the premises, Bozzuto advised her that she was responsible for compensating Bozzuto for replacement flooring in an amount exceeding $6,000, on top of a withheld security deposit.

18.     Bozzuto's claim, however, was supported by neither contract (e.g., the lease) nor any other basis.

19.     In fact, Bozzuto had previously alerted Plaintiff and other apartment complex residents that it would be replacing flooring as a matter of routine maintenance.

20.     Plaintiff, accordingly, informed Bozzuto that she would not pay the erroneously assessed replacement charge.

21.      Several months later, in October 2022, FCO dunned Plaintiff for payment on behalf of Bozzuto.

22.     In response, Plaintiff disputed the debt, even hiring an attorney to send a letter on her behalf.

23.     FCO then sent Plaintiff proof that the flooring had, in fact, been replaced.

24.     Plaintiff's dispute, of course, pertained to whether she actually owed Bozzuto the replacement flooring costs—not whether the flooring had been replaced.

25.     Plaintiff's then-attorney responded to FCO in January 2023, explaining that FCO was mistaken in its debt collection efforts.

26.     At that point, a collections account began reporting on Plaintiff's Experian credit report.

27.     Plaintiff disputed the debt to Experian on or about January 30, 2023. Plaintiff explained that she did not owe Bozzuto for the replacement flooring, and she attached several documents to her dispute that established the same, including her lease agreement.

28.     Upon information and belief, Experian forwarded notification of Plaintiff's dispute to FCO.

29.     Despite Plaintiff's dispute and the supporting information attached to it, FCO simply verified the debt as being owed.

30.     Experian, meanwhile, relied entirely on FCO's investigation. Experian neglected to conduct any other investigation.

31.     As a result, the inaccurate information about the collections account remained on Plaintiff's credit report.

32.     Plaintiff disputed the FCO account with Experian several more times over the next few months, including but not limited to disputes in August 2023, October 2023, and November 2023.

33.     Each time, FCO erroneously verified the debt.

34.     And, in response to each dispute, Experian again relied entirely on FCO's inadequate investigations. The inaccurate information, therefore, remained on Plaintiff's Experian report after each dispute.

35.     As of the date of this filing, the inaccurately reported FCO collections account remains on Plaintiff's Experian report.

36.     And FCO's collection efforts are ongoing.

37.     As a result of Defendants' conduct, Plaintiff has suffered significant actual damages, including a reduced credit score, credit denials, inability to obtain credit, embarrassment, humiliation, and emotional distress.

### *Defendants' FCRA Violations Were Willful*

38.     As a standard practice, Experian does not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the response of the furnisher despite several court decisions admonishing this practice. *See, e.g.*, *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp.

2d 1220, 1230–31 (D. N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

39.     Upon information and belief and consistent with its standard policies and procedures, Experian automatically generated its "investigation" results once FCO verified the status of the collections account. Experian did not take any extra actions to verify the accuracy of the information that the furnisher provided it.

40.     Instead, Experian blindly accepted FCO's version of the facts and continued to report the inaccurate, derogatory information on Plaintiff's credit report.

41.     Experian continues the practice of parroting the furnisher's response despite several lawsuits alleging (and establishing) that they fail to conduct a reasonable investigation under the FCRA.

42.     Experian does not intend to modify its dispute-processing procedures because doing so would drastically increase its operating expenses.

43.     As a result, at all times relevant to this Complaint, Experian's conduct was willful and carried out in reckless disregard for a consumer's rights under the FCRA. By example only and without limitation, its conduct was willful because it ran a risk of harm that was known, or so obvious it should have been known, by failing to implement any procedure to identify and correct these common errors before furnishing reports.

44.     FCO's processing of consumer disputes was also willful and carried out in reckless disregard for consumers' rights under the FCRA. For example, FCO's conduct was willful because

it was intentionally accomplished through intended procedures that prioritize efficiency over accuracy.

45.     Indeed, it has been sued by the Consumer Financial Protection Bureau in the past for problems with its investigation procedures and misrepresentation of consumer debts. *See, e.g.*, CFPB, *CFPB Takes Action Against Debt Collector for Failing to Investigate Reports of Identity Theft and Misrepresenting Consumers' Debts* (Aug. 17, 2021), https://www.consumerfinance.gov/about-us/newsroom/cfpb-takes-actions-against-debt-collector-for-failing-to-investigate-reports-of-identity-theft-and-misrepresenting-consumers-debts/.

46.     In addition, the willfulness of FCO's FCRA violations can be established by, for example:

   a.  Congress enacted the FCRA in 1970, and FCO has had over 50 years to become compliant;

   b.  FCO is a company with access to legal advice through its own general counsel and outside litigation counsel. Yet there is not contemporaneous evidence that FCO determined that its conduct was lawful;

   c.  FCO knew, or had reason to know, that its conduct contradicted the FCRA's plain language, regulatory guidance, and the relevant case law;

   d.  FCO voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading of the statute that was merely careless;

   e.  FCO's FCRA violations were repeated and systematic;

   f.  FCO had substantial documentation available to it that apprised it of its duties under the FCRA but still chose not to comply with the statute; and

   g.  FCO had notice of its defective dispute processing procedures through internal audits and litigation but chose not to meaningfully change its policies and procedures to comply with the FCRA.

**COUNT ONE:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681e(b)**
**(EXPERIAN)**

47.     Plaintiff incorporates the preceding allegations.

48.     Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files that it published and maintained.

49.     Because of Experian's conduct, Plaintiff suffered actual damages, including, without limitation, including a reduced credit score, credit denials, inability to obtain credit, embarrassment, humiliation, and emotional distress.

50.     Experian's conduct in violating § 1681e(b) was willful, rendering it liable to Plaintiff for actual damages, statutory damages, punitive damages, costs, and attorneys' fees under 15 U.S.C. § 1681n.

51.     In the alternative, Experian was negligent, entitling Plaintiff to a recovery under 15 U.S.C. § 1681o.

**COUNT TWO:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681i**
**(EXPERIAN)**

52.     Plaintiff incorporates the preceding allegations.

53.     Experian violated multiple sections of § 1681i, including but not limited to: (1) failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate in violation of § 1681i(a)(1); (2) failing to provide FCO with all the relevant information about Plaintiff's disputes in violation of § 1681i(a)(2); (3) failing to review and consider all relevant information submitted by Plaintiff in violation of §1681i(a)(4); (4) failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation of § 1681i(a)(5)(A).

9

54.     Because of Experian's violations of §1681i, Plaintiff suffered actual damages, including, but not limited to, including a reduced credit score, credit denials, inability to obtain credit, embarrassment, humiliation, and emotional distress.

55.     Experian's violations of § 1681i were willful, rendering it liable to Plaintiff for actual damages, statutory damages, punitive damages, costs, and attorneys' fees under 15 U.S.C. § 1681n.

56.     In the alternative, Experian was negligent, entitling Plaintiff to a recovery under 15 U.S.C. § 1681o.

**COUNT THREE:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(A)**
**(FCO)**

57.     Plaintiff incorporates the preceding allegations.

58.     On one or more occasion within the past two years, FCO violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes.

59.     When Plaintiff disputed the account with Experian, FCO used a dispute system named "e-Oscar," which is an automated system that the consumer-reporting agencies have developed to quickly transmit disputes to furnishers.

60.     E-Oscar is an automated system, and the procedures used by the credit reporting agencies are systematic and uniform.

61.     E-Oscar's dispute processing is systemic and uniform: when the credit reporting agencies receive consumer disputes, they (usually via an outsourced vendor) translate each dispute into an automated consumer dispute verification ("ACDV") form.

62.     Upon information and belief, the ACDV form is way that FCO has elected to receive consumer disputes under 15 U.S.C. § 1681i(a).

63.     Upon information and belief, Experian forwarded Plaintiff's disputes by ACDVs.

64.     FCO understood the nature of Plaintiff's disputes when it received the ACDV forms.

65.     Upon information and belief, when FCO received ACDV forms containing Plaintiff's disputes, it followed a standard and systematically unlawful process where it only reviewed its own internal computer screen for the account and repeated back the same information to the ACDV system that was previously reported to Experian.

66.     Upon information and belief, when FCO receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether there is information already in its computer system that would demonstrate the disputed information is misleading or inaccurate.

67.     Because of FCO's violation of 15 U.S.C. § 1681s-2(b)(1)(A), Plaintiff suffered actual damages, including a reduced credit score, credit denials, inability to obtain credit, embarrassment, humiliation, and emotional distress.

68.     FCO's conduct in violating 15 U.S.C. § 1681s-2(b)(1)(A) was willful, rending it liable to Plaintiff for punitive damages under 15 U.S.C. § 1681n.

69.     In the alternative, FCO was negligent, entitling Plaintiff to a recovery under 15 U.S.C. § 1681o.

**COUNT FOUR:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(B)**
**(FCO)**

70.     Plaintiff incorporates the preceding allegations.

71.     On one or more occasion within the past two years, FCO violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the credit reporting agencies.

72.     As Plaintiff detailed in the previous Count, FCO has elected to use the e-Oscar system for its FCRA disputes from the consumer reporting agencies.

73.     When it received the ACDV forms from Experian, FCO did not review any of the information that Plaintiff included in her dispute, which demonstrated that FCO's reporting of the account was inaccurate.

74.     If FCO had reviewed this information, it would have known that its previous reporting was incorrect and needed to be updated.

75.     FCO also ignored the other information that Experian provided on Plaintiff's disputes, including the two-digit dispute code that the agencies listed on the ACDV form.

76.     FCO knew the meaning of the dispute codes used by the consumer-reporting agencies in e-Oscar.

77.     FCO does not contend that the ACDV system is an inadequate means to receive FCRA disputes from the consumer-reporting agencies.

78.     FCO understood Plaintiff's disputes and that she was disputing that she owed the claimed amount to FCO.

79.     Despite this, FCO did not update its incorrect reporting regarding the account and continued to report the inaccurate information about Plaintiff.

80.     Because of FCO's 15 U.S.C. § 1681s-2(b)(1)(B) violations, Plaintiff suffered actual damages, including a reduced credit score, credit denials, inability to obtain credit, embarrassment, humiliation, and emotional distress.

81.     FCO's violations of 15 U.S.C. § 1681s-2(b)(1)(B) were willful, rendering it liable for damages under 15 U.S.C. § 1681n.

82.    In the alternative, FCO was negligent, entitling Plaintiff to recover damages under 15 U.S.C. § 1681o.

**COUNT FIVE:**
**VIOLATION OF FDCPA, 15 U.S.C. § 1692e**
**(FCO)**

83.    Plaintiff incorporates the preceding allegations.

84.    FCO violated the FDCPA, § 1692e, by using any false, deceptive, or misleading representation or means in connection with the collection of any debt including, attempting to collect a debt from Plaintiff that she did not owe.

85.    Plaintiff suffered actual damages because of FCO's § 1692e violation, including a including a reduced credit score, credit denials, inability to obtain credit, embarrassment, humiliation, and emotional distress.

86.    Plaintiff is entitled to recover actual damages, statutory damages, her reasonable attorneys' fees, and costs under 15 U.S.C. § 1692k.

WHEREFORE, Plaintiff demands judgment for actual, statutory, and punitive damages against Defendants as pleaded above; her attorneys' fees and costs; prejudgment and post-judgment interest at the judgment rate; and any other relief the Court finds appropriate.

Respectfully submitted,
**PLAINTIFF**

By:_____*/s/ Kristi C. Kelly*_____
Kristi C. Kelly (Bar No. 07244)
J. Patrick McNichol (Bar No. 19034)
Kelly Guzzo, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572 – Telephone
(703) 591-0167 – Facsimile
Email: kkelly@kellyguzzo.com
Email: pat@kellyguzzo.com

*Counsel for Plaintiff*